IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY CASTALINE,<br><br>    Plaintiff,<br><br>v.<br><br>AARON MUELLER ARTS, et al.,<br><br>    Defendants. | No. C 09-02543 CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

Plaintiff and Counterdefendant, Jeffery Castaline is a competitor of Defendants and Counterclaimants, Aaron and Ronda Mueller (the "Muellers"). Castaline sued the Muellers in this Court for trademark and trade dress infringement and for unfair competition. Cmplt. at ¶¶ 19, 37, 51. The Muellers counterclaimed, seeking declaratory judgment on Counts 1-3 and monetary damages on Counts 4-6. Castaline moved to dismiss all counterclaims. After carefully considering the parties' submissions, and the arguments at the hearing, and good cause appearing therefor, the Court hereby GRANTS the motion to dismiss in part, by dismissing Counts 3 and 4 of the Counterclaim, and DENIES the motion to dismiss in part, as to Counts 1, 2, 5 and 6 of the Counterclaim.

## BACKGROUND

Plaintiff Jeffrey Castaline is an individual and sole proprietor doing business as Aanraku Glass Studios. Cmplt. at ¶ 1. Aanraku is in the business of creating and selling a variety of glass art products and goods designed to incorporate artistic material, including

jewelry findings (components for making jewelry). Cmplt. at ¶ 6. Among Aanraku's findings is a leaf-shaped "bail" - an item with a flat surface that allows a purchaser to apply adhesive and artistic material like glass to create a jewelry pendant - inscribed with a cross-hatched design surrounded by a circle. Id. Castaline alleges that the Muellers infringed both the trade dress (the leaf shape of the bail) and the trademark (the cross-hatch and circle design) by marketing confusingly similar bails. Cmplt at ¶¶ 19, 37. Castaline further alleges that the Muellers' action caused a false designation of origin and constitutes unfair competition. Cmplt at ¶ 27.

The Muellers filed a Counterclaim with six separate Counts. Counts 1-3 seek a declaratory judgment of non-infringement of the trade dress (Count 1), non-infringement of the trademark (Count 2), and trademark invalidity because of fraud on the PTO by the Plaintiff (Count 3). The Muellers additionally seek monetary relief for misappropriation and/or conversion (Count 4), interference with prospective economic advantage (Count 5), and unfair competition (Count 6). Castline moved to dismiss Counts 1-3 under Rule 12(f) and Counts 4-6 under Rule 12(b)(6).

**DISCUSSION**

**1.  Motion to Dismiss under Rule 12(f)**

  **A.  Legal Standard**

"[T]he court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). On a motion to strike, the court must view the pleading under attack in the light most favorable to the pleader. See State of Cal. v. United States, 512 F.Supp. 36, 39 (N.D. Cal. 1981). Furthermore, in adjudicating a motion to strike, the court should consider that "the function of a 12(f) motion to strike is to avoid the expenditure of time and money[, which] arise from litigating spurious issues by dispensing with those issues prior to trial...." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). "Generally, Rule 12(f) motions are 'disfavored' because they are 'often used as delaying tactics, and because of the limited importance of pleadings in federal practice.'" Equine Solutions, Inc., v. Buntrock, No.

2

07-04976 (CRB), 2008 WL 111237, at *2 (N.D. Cal. Jan. 9, 2008) (citing Bureerong v. Uvawas, 922 F.Supp. 1450, 1478 (C.D. Cal. 1996) (quotations and citations omitted)).

### B. Counts 1-2: Trademark and Trade Dress Non-Infringement

Castaline asserts that the trade dress (Count 1) and trademark (Count 2) non-infringement counterclaims should be dismissed because they are "mirror images" of issues that will be determined through the complaint. Mot. at 5. Although Castaline is correct that the issues covered by Counts 1 and 2 will likely receive attention by resolution of Complaint ¶¶ 13-24 and 34-42, "it is not always appropriate to strike declaratory judgment counterclaims simply because they concern the same subject matter or arise from the same transaction as the complaint." See Stickrath v. Globalstar, Inc., No. 07-1941(TEH), 2008 U.S. Dist. LEXIS 95127, at *11 (N.D. Cal. May 13, 2008) (citing Pettrey v. Enterprise Title Agency, Inc., No. 1:05CV1504, 2006 U.S. Dist. LEXIS 83957, at *3 (N.D. Ohio Nov. 17, 2006)). Courts should instead focus on whether the counterclaims "serve any useful purpose." Id.

In the patent and trademark realm, courts have found that counterclaims alleging patent or trademark invalidity should not be dismissed as redundant under Rule 12(f). In Stickrath v. Globalstar for example, the court explained that "courts should decline to dismiss counterclaims that seek a declaration that the patent or trademark is invalid" because the issue of non-infringement is distinct from the issue of invalidity and a case and controversy over patent and trademark validity continues even after the issue of infringement is resolved. Id. at 3 (citing Cardinal Chem. Co. v. Morton Int'l, 508 U.S. 83, 94-96 (1993)). Similarly, the court in Dominion Elec. Mfg. Co. v. Edwin L. Wiegand Co., 126 F.2d 172, 175 (6th Cir. 1942), reversed the trial court and declined to dismiss a counterclaim alleging trademark non-infringement and invalidity. The court explained that because a plaintiff alleging patent or trademark infringement may terminate the litigation, and leave the issue of patent or trademark validity unresolved, for the sake of "avoidance of multiplicity of actions," such counterclaims should not be dismissed. Id.

3

Here, the Muellers in Count 1 allege non-infringement under a number of theories including that the trade dress is invalid because Castaline "will be unable to prove by the required preponderance of the evidence the threshold requisite of distinctiveness or secondary meaning..." Counterclaim at ¶¶ 29-30. In Count 2, the Muellers similarly allege trademark non-infringement under a number of theories, including that the trademark is invalid due to the "functionality" of the cross-hatch mark. Id. at ¶ 34.

Because the Court finds the reasoning of Stickrath and Dominion persuasive, and the Muellers allege invalidity of the trade dress and trademark within Counts 1 and 2, the Court DENIES the motion to dismiss both Counts.

### C. Count 3: Fraud on the PTO

In Count 3 of the Counterclaim, the Muellers allege that Castaline committed fraud on the PTO by knowingly "misrepresent[ing] to the PTO the date of first use in commerce for the specific design of the Glue On Tab within the oval" and by knowingly misrepresenting the "functionality" of the crossed lines. Counterclaim at ¶ 39. Count 3 meets the pleading requirements for fraud. Fed. R. Civ. P. 9(b).

Nevertheless, Count 3 is redundant of the Eleventh, Twelfth, Fifteenth, Sixteenth and Twenty-Second affirmative defenses pled in Defendants' amended answer. See Amended Answer, at 15-19. See Strickrath, 2008 US Dist. LEXIS 95127, at *8 (indicating that a counterclaim that will be resolved by the affirmative defenses is redundant and should therefore be dismissed). The reasoning from Stickrath that applied to Counts 1 and 2 does not apply to Count 3 because a resolution of Counts 1 and 2 would make a resolution of Count 3 redundant: the only relief sought by the Muellers is a declaration of non-infringement and invalidity of the trademark and trade dress. Counterclaim at ¶ 2, a-c. The fraud count presupposes invalidity either by prior use in commerce or functionality that was knowingly misrepresented to the PTO. Thus, if the Muellers prevailed on Count 3, then the Muellers would also necessarily prevail on Counts 1 and 2, but the converse is not true. Because Counts 1-3 seek the same declaratory relief, and Count 3 presupposes the earlier counts, Count 3 is redundant.

Therefore, the Court GRANTS the motion to dismiss Count 3 as a redundant count under Rule 12(f), without leave to amend.

**2.     Motion to Dismiss under Rule 12(b)(6)**

**A.     Legal Standard**

"A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the pleadings." Silas v. E*Trade Mortg. Corp., 421 F. Supp. 2d 1315, 1317 (S.D. Cal. 2006). The complaint is to be construed in the light more favorable to the non-moving party and all material allegations in the complaint are take as true. Sanders v. Kennedy, 794 F.2d 478, 481 (9th Cir. 1986). However, district courts need not accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged. Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1996). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d. 979, 988 (9th Cir. 2001).

**B.     Count 4: Misappropriation and/or Conversion**

Count 4 alleges that the Muellers were the first party to use the descriptive term "leaf bail." Counterclaim at ¶ 45. It further alleges that Castaline infringed the Muellers' rights to the descriptive term leaf bail, misappropriated that term, and converted it for Castaline's own use. Counterclaim at ¶ 46.

Castaline correctly argues that this fails to state a claim for relief because the Muellers fail to assert ownership of any trademark right in the descriptive term "leaf bail" and no allegation of consumer confusion is made. See Mot. at 7. A descriptive mark is entitled to protection only if it has acquired secondary meaning - i.e., a strong association between the mark and its owner - in the mind of the relevant consumer population. Surgicenters of America, Inc. v. Medical Dental Surgeries Co., 601 F.2d 1011, 1014 (9th Cir. 1979). Because the Muellers fail to allege either ownership of a trademark or secondary meaning, Count 4 fails to allege any property right that may have been infringed, misappropriated or

5

converted. Furthermore, the Muellers do not argue to the contrary. See Opp. at 11 (stating that they would rather not "burden the court with further dialogue" on this issue).

Therefore, the Court GRANTS the motion to dismiss Count 4, with leave to amend.

**C.    Counts 5 and 6: Interference with Prospective Economic Advantage and Unfair Competition**

Counts 5 and 6 allege that Castaline interfered with the Muellers' prospective economic advantage and acted in violation of California's Unfair Competition Law for three reasons: (1) Castaline sent copies of the complaint in this action to the Muellers' distributors and communicated to third parties that if third parties purchased the Muellers' bails, Castaline would (2) commence legal action against third parties and (3) refuse to sell Castaline's bails to third parties. Counterclaim at ¶ 52.

Castaline moves to dismiss Counts 5 and 6 for failure to state a claim because the actions complained of are privileged under California law and federal law. Mot. at 8:13. Castaline correctly argues that sending the complaints is privileged under the California Litigation Privilege and that threatening legal action is similarly privileged under the Noerr-Pennington doctrine right to petition. However, Castaline incorrectly argues that refusing to sell Castaline's bails to third parties is also privileged. Because not all of Castaline's alleged actions are privileged, the Court DENIES the motion to dismiss Counts 5 and 6 for failure to state a claim.

    1.    California Litigation Privilege

Castaline argues that his sending of the Complaint to distributors is protected by the litigation privilege. Under California Law, the litigation privilege applies to any "publication or broadcast" made in any "judicial proceeding." Cal. Civ. Code § 47. Courts have broadly applied the litigation privilege to cease and desist letters and other litigation and pre-litigation communications. See Blanchard v. DirecTV, Inc., 123 Cal. App. 4th 903, 919 (2004). The litigation privilege applies when the following four requirements are met: "[T]he publication (1) was made in a judicial proceeding; (2) had some connection or logical relation to the action; (3) was made to achieve the objectives of the litigation; and (4) involved litigants or

other participants authorized by law." Costa v. Superior Court, 157 Cal. App. 3d 673, 677 (1984).

Here, the first requirement is satisfied because the Complaint relates to a judicial proceeding even though it was not made in the proceeding per se. Id. at 678 ("[T]he absolute privilege applies 'even though the publication is made outside the courtroom and no function of the court or its officers is invoked.'" (internal citation omitted)). The second and third requirements are satisfied because Castaline notified the distributors of a lawsuit they could become a party to (satisfying 2) and sought to further the primary objective of the litigation - stopping the Muellers and their distributors from unlawfully selling infringing products (satisfying 3). The fourth requirement is also met because "other participants authorized by law" include non-parties who have a "substantial interest in the outcome of the pending litigation." Id. at 677-678. See also Adams v. Superior Court, 2 Cal. App. 4th 521, 529 (1992). Finally, the Muellers, in their Opposition, do not attempt to dispute that any of these factors were not met. Therefore, the sending of the complaint is privileged and does not state a claim.

### 2. Noerr-Pennington

Castaline argues that his threat to commence litigation against third parties is privileged under the First Amendment right to petition and the Noerr-Pennington doctrine. Mot. at 12. Sosa v. DirecTV Inc., 437 F. 3d 923, 936 (9th Cir. 2006) ("Not only petitions sent directly to the court in the course of litigation, but also conduct incidental to the conduct of the suit protected by the Noeer-Pennington doctrine." Id. at 934-35). Furthermore, the Muellers acknowledge that the Noerr-Pennington doctrine has been extended by judicial decisions to state tort claims. Opp. at 13.

However, the Muellers argue that Castaline is not entitled to Noerr-Pennington protection because Castaline's petitioning activity was a sham. Opp. at 13. The Noerr-Pennington doctrine does not protect petitioning activity "ostensibly directed toward influencing governmental action" but in fact "a mere sham to cover ... an attempt to interfere directly with the business relationships of a competitor." Eastern R. R. Presidents

Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 144 (1961). The Supreme Court has further limited the sham exception to First Amendment immunity only if the lawsuit is objectively baseless in that "no reasonable litigant could realistically expect success on the merits." Professional Real Estate Investor, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 60-61 (1993).

The Muellers' argument is misplaced. The Muellers, in their opposition to the motion to dismiss and in their amended Counterclaim, fail to assert that the litigation between the Muellers and Castaline is objectively basis. Additionally, even if the Muellers did allege this, they would likely fail to meet the requirements for proving a suit "objectively baseless." Castaline's suit cannot be considered objectively baseless because Castaline has a registered trademark, believes that the Muellers are infringing his trademark, and thus, has a valid basis for his suit. See Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978) ("Even where the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit."); and White v. Lee, 227 F.3d 1214, 1232 (9th Cir. 2000) (noting that a winning lawsuit is not a sham, but also that "[t]he fact that a litigant loses his case does not show that his lawsuit was objectively baseless."). Therefore, the sham litigation exception does not apply and Castaline's communications with third parties is protected under the Noerr-Pennington doctrine.

### 3. Competition Privilege

Finally, Castaline argues that the competition privilege is an absolute bar to the Muellers' cause of action as to Castaline's threat to cease selling bails to any distributors who continued to sell the Muellers' bails. Mot. at 12-13. The privilege has a four part test:

> One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if: (a) the relation concerns a matter involved in the competition between the actor and the other and (b) the actor does not employ wrongful means and (c) his action does not create or continue an unlawful restraint of trade and (d) his purpose is at least in part to advance his interest in competing with the other.

S.F. Design Ctr. Assoc. v. Portman Co., 41 Cal. App. 4th 29, 40 (1995) (citing Restatement (Second) of Torts § 768 (1979)). Castaline cites to the above language, arguing that all four

1 requirements are met. Mot. at 13. However, Castaline fails to satisfy the second prong
2 because the refusal to sell Castaline's bails to non-neutral distributors may have interfered
3 with actual contracts and thus constituted "wrongful means."
4     Courts have drawn a distinction between contractual relations that are "merely
5 contemplated or potential" and those that are more definite. See, e.g., A-Mark Coin Co. v.
6 General Mills, Inc., 148 Cal. App. 3d 312, 324 (1983); Los Angeles Land Co v. Brunswick
7 Corp., 6 F.3d 1422, 1430 (9th Cir. 1993). Only in the "merely contemplated or potential"
8 scenario do courts definitively find that "wrongful means" were not used. Id. at 1431
9 (explaining that "[b]ecause the record shows that L.A. Land's contractual relations with
10 Timberlake were 'merely contemplated or potential,' Brunswick was free to 'refuse to deal
11 with third parties [e.g., Timberlake] unless they cease dealing with' L.A. Land" (internal
12 citations omitted)). Additionally, courts have explained that "[t]he competitive privilege
13 clearly is inapplicable to interference with an existing contract unless the contract is
14 terminable at will." S.F. Design Ctr. Assoc., 41 Cal. App. 4th at 40.
15     The Muellers argue that "there has been actual and threatened disruption of certain of
16 Muellers' Economic Relationships by reason of such acts of Castaline." Counterclaim at ¶
17 55. Because the Muellers allege that harm was done to economic relationships that were not
18 "merely contemplated," Castaline may have used "improper means" and the competition
19 privilege does not apply to Castaline's communications to the distributors. Therefore,
20 Castaline's argument that Counts 5 and 6 "fail to state a claim because the actions
21 complained of are privileged under California law and federal law" fails. Mot. at 8.
22     Consequently, the Court DENIES the motion to dismiss Counts 5 and 6.

### CONCLUSION

24     For the forgoing reasons, the Court GRANTS the motion to dismiss Counts 3 and 4
25 //
26 //
27 //
28 //

9

and DENIES the motion to dismiss all other counts.

**IT IS SO ORDERED.**

Dated: February 16, 2010



CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE